| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

CARLOS SEIXAS,

                        Plaintiff,

    – against –

TARGET CORPORATION,

                        Defendant.

**MEMORANDUM & ORDER**

15-cv-03851 (ERK) (RML)

KORMAN, *J.*

In this premises liability case, Target Corp. moves for summary judgment on the ground that the plaintiff, Carlos Seixas, cannot show by a preponderance of the evidence that Target had notice of the dangerous condition that caused his fall. Target's motion is denied.

**BACKGROUND**

Undisputed Facts

Target, a major national retailer, operates a large store at the corner of Atlantic and Flatbush Avenues in Brooklyn. In the evening of July 17, 2014, as Carlos Seixas was shopping at that location, he slipped and fell on some liquid dish soap that had spilled onto the floor. Seixas fell while situated about halfway to three-quarters of the way down aisle A22, one of several aisles that contained cleaning products. Seixas had not noticed the soap before he slipped in it, did not know how it got on the floor or where it had come from, and did not have any idea how long it had been there. A Target employee had last inspected aisle A22 about 10 minutes before Seixas fell, and did not see any liquid on the floor.

New York's Law of Premises Liability

Because the parties are in federal court based only on their diversity of citizenship, *see* 28 U.S.C. § 1332(a), New York's substantive law of negligence governs this removed action, *see generally Hanna v. Plumer*, 380 U.S. 460 (1965). Negligence in New York follows the familiar elements of 1) a duty of care owed the plaintiff, 2) a breach of that duty, and 3) a compensable injury proximately caused by the breach. *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294–95 (N.Y. 1985). To show a breach of duty in a slip-and-fall case, the plaintiff must show that the defendant either "created the condition which caused the accident, or . . . had actual or constructive notice of the condition." *Bykofsky v. Waldbaum's Supermkts., Inc.*, 619 N.Y.S.2d 760, 761 (N.Y. App. Div. 1994).

Target seeks summary judgment on whether it breached its duty to Seixas. In opposition, Seixas does not argue either that Target spilled the soap on which he slipped, or that anyone working at Target actually knew the spill was there. Rather, he argues that Target had constructive notice of the spill at the time he fell. The New York Court of Appeals has held that to put a proprietor on constructive notice, a condition "must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it." *Chianese v. Meier*, 774 N.E.2d 722, 726 (N.Y. 2002) (quoting *Gordon v. Am. Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986)).

Because Target does not seriously contest the point, I assume without deciding that the soap spill was "visible and apparent." The dispositive issue, then, is whether Seixas has presented evidence sufficient to survive summary judgment that, at the time he fell, the spill had existed for long enough to put Target on notice of a dangerous condition on its premises.

## ANALYSIS

Since Federal Rule of Civil Procedure 56 governs Target's motion, each party bears the same burden of production at summary judgment as it would at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The standard would be different in the New York state court where this action started: Under New York's Civil Practice Rules, N.Y. C.P.L.R. 3212(b), Target would have the burden of producing evidence sufficient to support a verdict that it did *not* have constructive notice of the spill, *DeFalco v. BJ's Wholesale Club, Inc.*, 832 N.Y.S.2d 632, 633 (N.Y. App. Div. 2007). The predictable consequence is that Target and other retailers routinely remove personal injury suits to federal court in order to avoid New York's tougher test for avoiding trial—the sort of forum shopping that federal courts have sought to discourage since *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Although the Second Circuit has not spoken to the issue, district courts within the circuit have been unanimous in holding that Federal Rule 56's burden-allocation scheme must be applied in diversity cases, state law notwithstanding. *See, e.g.*, *Painchault v. Target Corp.*, 2011 WL 4344150 (E.D.N.Y. 2011) (Garaufis, J.). I agree. Indeed, because Rule 56 directly answers the question at hand, there is no need to "wade into *Erie*'s murky waters" to determine whether C.P.L.R. 3212(b) is substantive or procedural. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Where a federal statute or rule "purports to govern, it applies if it is valid, even if, absent an applicable federal [law]," federal courts would follow the relevant state rule. *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 113–14 (2d Cir. 2013). The rule applies unless it exceeds the scope of either the Rules Enabling Act, or Congress's power to "regulate matters [of practice in the federal courts] which . . . are rationally capable of classification as either" substance or procedure. *Hanna v. Plumer*, 380 U.S. 460, 472 (1965).

Rule 56's directive that the parties' summary-judgment burdens match their trial burdens meets that standard. It does not alter the substantive legal standard which each party must direct its proof towards, or the substantive evidentiary standard that would apply at trial. *See Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 254–55. Rather, it allows those same substantive rules to be applied by a different factfinder (a judge rather than a jury), at a different time (earlier rather than later), on the basis of evidence presented in a different way (printed submission rather than live presentation conforming to the Rules of Evidence). Each of these effects is at least arguably procedural—in that they go to "the judicial process for enforcing rights and duties recognized by substantive law," *Hanna*, 380 U.S. at 464 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941))—and that is enough to conclude that Rule 56 falls within Congress's power to regulate federal practice, *Capiello*, 720 F.3d at 115. For the same reason, it does not "abridge, enlarge, or modify any substantive right," and is within the scope of the Rules Enabling Act, 28 U.S.C. § 2072. *Hanna*, 380 U.S. at 464.

Since Rule 56 applies, and Seixas would bear the burden of proving his claim at trial, Target may prevail at the summary judgment stage by "pointing to an absence of evidence to support an essential element of" Seixas's case. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988) (internal modifications and quotation marks omitted)). Once it does so, Seixas must demonstrate the existence of a genuine issue for trial by pointing to evidence "such that a reasonable jury could return a verdict" in his favor on the point in question. *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016).

Seixas does not point to any direct evidence of how long the soap spill was present before his fall. Instead, he contends a reasonable jury could infer that the spill was present for long enough

that Target employees could have found and fixed it. Of course, lots of knowledge is based on inferences, *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) (Easterbrook, J.), and as the non-moving party, Seixas is entitled to have all reasonable ones drawn in his favor, *Cross Commerce*, 841 F.3d at 162.

Seixas argues that photographs taken shortly after his fall show dirt and debris in and around the spill, from which a jury could infer that the soap had been sitting on the floor and accumulating detritus for an appreciable time. As a general matter, the New York Court of Appeals has recognized that as a permissible inference, given the right evidentiary foundation. *See Negri v. Stop & Shop*, 480 N.E.2d 740, 741 (N.Y. 1985). Seixas has laid such a foundation here.

Between them, the parties have submitted three separate copies of the same photographs. The first two copies, reproduced as Target's Exhibit E and Seixas's Exhibit A, were so low-quality as to be almost useless. In deciding whether the photos create a triable issue of fact regarding constructive notice, I rely solely on the higher-quality copies that Target later provided in response to my order of May 10, 2017. They are docketed as Exhibit 1 to Document #18.

The photographs in question show what appears to be a waxed linoleum tile floor, of the sort common in grocery stores and big-box retailers. Two separate soap spills are visible. The details of one spill are shown in the first and fourth photographs. It is dumbbell-shaped, with intact edges. It does not appear, with the exception of one black mark at its lower right-hand tip, to have accumulated any dirt or grime. The details of the other spill are shown in the second photograph. In contrast to the relatively clean, intact appearance of the first spill, this second patch of soap has obviously been disturbed since it was spilled. Its edges are irregular and heavily smeared, and it appears to have an accumulation of black particles floating in it.[1]

---

[1] Target points to the deposition of Niall Rouse, the EMT who responded to the incident, who testified that the spill had no "streaks" and looked "untouched or undisturbed." Seixas Ex. B., Rouse Dep. at 18:16–19:7. I note that this

The third photograph (viewed along with the other three) indicates each spill's position relative to the other, and to the aisle as a whole. The dumbbell-shaped spill is toward the edge of the aisle, in the shadow of a boxy metal object—perhaps a structural pillar or length of ducting—that sticks vertically up from the aisle's floor and narrows its walkable width. A patron walking far enough towards the middle of the aisle to avoid crashing into this metal box would also have been far enough from the aisle's edge to avoid impinging on the dumbbell spill. From the perspective of the photographer, the smeared spill is located approximately three tile widths down and two tile widths to the right of the dumbbell-shaped one. That position would have put it squarely in the walking path of any customer who moved towards the middle of the aisle in order to navigate around the metal box.

Viewed in the light most favorable to Seixas, these photographs are sufficient to defeat summary judgment on the question of constructive notice. The evidence shows two spills: one shielded from customers passing through the aisle, and one directly in their path. The out-of-the-way spill is relatively pristine, while the in-the-way one is smeared and speckled with grime. A reasonable jury could infer that the latter spill accumulated that dirt as shopping carts and shoe leather passed through it over the course of as many as ten minutes between Seixas's fall and Target's most recent inspection of aisle A22, and that a Target employee should have discovered and disposed of it during that time.

To be sure, this is less evidence from which to infer the spill's likely duration than existed in *Negri v. Stop & Shop* or *Figueroa v. Pathmark Stores*. In *Negri*, the plaintiff slipped in a mess of broken baby food jars. In addition to the baby food being "dirty and messy," a nearby witness

---

testimony appears to contradict the photographs relied on by both parties. Nevertheless, the summary judgment stage is not the time to "weigh evidence or assess the credibility of witnesses." *Hayes v. N.Y.C. Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

had not heard breaking glass for 15 or 20 minutes prior to the plaintiff's accident, and the aisle had not been cleaned for one or two hours. 480 N.E.2d 740, 741 (N.Y. 1985). And in *Figueroa*, where the plaintiff slipped on a pool of spilled liquid, footprints and shopping-cart tracks led some distance away from the spill, and had begun to change color and consistency. 2004 WL 74261, at *3–4 (S.D.N.Y.). But other New York decisions strongly suggest that slip-and-fall plaintiffs may put a constructive-notice theory to the jury when a spill is "dirty or . . . ha[s] been tracked through." *See Wells v. Golub Corp.*, 582 N.Y.S.2d 557, 558 (N.Y. App. Div. 1992); *Mueller v. Hannaford Bros. Co.*, 713 N.Y.S.2d 789, 790 (N.Y. App. Div. 2000). So, mindful that constructive notice is ultimately a question for the trier of fact, I opt to "act with caution," and deny summary judgment in favor of a full trial on the merits. *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (Glasser, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *cf.* 10A WRIGHT & MILLER § 2728 (4th ed.) ("[E]ven [when] . . . the summary-judgment standard appears to have been met, the court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of terminating the action prior to a full trial.").[2]

## CONCLUSION

Target's motion for summary judgment is denied. My courtroom deputy will contact the parties to schedule a status conference to discuss the path forward in this litigation. The parties should be prepared to address the possibility of holding a trial limited to the question of liability before beginning expert discovery.

**SO ORDERED.**

Brooklyn, New York
May 16, 2017

*Edward R. Korman*
Edward R. Korman
United States District Judge

---

[2] Because the photographs are sufficient to defeat Target's motion, I do not reach Seixas's alternate theory of constructive notice based on the testimony of Chris Garvey. *See* Seixas Mem. in Opposition 7–10.